**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marivette Sabrina Elias, | CIV 13-930-PHX-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Marivette Sabrina Elias' appeal from the Social Security Administration's final decision to deny her claim for supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for supplemental security income on March 12, 2009, alleging disability beginning June 1, 2008. (Transcript of Administrative Record ("Tr.") at 19, 145-51.) Her application was denied initially and on reconsideration. (Tr. at 84-88, 93-96.) On April 2, 2010, she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 97.) A hearing was held on September 13, 2011, (Tr. at 33-80), and the ALJ issued a decision on September 16, 2011, finding that Plaintiff was not disabled (Tr. at 16-32). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1)  determine whether the applicant is engaged in "substantial gainful activity";

(2)  determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

    (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

    (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § 404.1520). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

    At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 12, 2009 – her alleged onset date. (Tr. at 21-22.) At step two, he found that Plaintiff had history status post right sided hemilaminectomy, microdisectomy and foraminotomy, disorder of the back, and migraines. (Tr. at 22.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 416.925 and 416.926. (Tr. at 22.) The ALJ found that Plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) with the following exceptions: can occasionally lift 8-10 pounds with the right or left hands and 16-20 pounds with both hands together; can sit or stand for one half hour at a time and walk at one time for one half block; should avoid bending, twisting, and stooping as defined as infrequently to none.[1] (Tr. at 22-24.) The ALJ determined that Plaintiff was unable to perform any past relevant work, but that considering her age, education, work experience, and residual functional capacity there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 24-26.) Therefore, the ALJ concluded that Plaintiff has not been under a disability from March 12, 2009, through the date of his decision. (Tr. at 26.)

\\\

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; and (2) rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for doing so. Plaintiff requests that the Court remand for determination of disability benefits.

**A.     Medical Source Opinion Evidence**

Plaintiff first argues that the ALJ erred by rejecting the assessment of treating provider, Amy Lenox, a certified physician assistant, and instead relying on the opinion of Quirino Valeros, M.D., and an opinion from a State agency physician.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to a treating physician's opinion. See id. The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion. See id.; Reddick, 157 F.3d at 725. An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Reddick, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than treating or examining physicians. See Lester, 81 F.3d at 831. Although an ALJ generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. See Thomas v. Barnhart, 278

- 4 -

F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion ... ." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

As applicable to the instant matter, physicians' assistants are not considered "acceptable medical sources" under the Social Security regulations. See 20 C.F.R. § 404.1513(d)(1), 416.913(d)(1). Rather, these medical professionals are considered "other sources." See id. However, in determining whether a claimant is disabled, an ALJ must consider lay witness testimony, including other medical source opinions, concerning a claimant's ability to work.[2] See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted) (stating that "[l]ay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence ... and therefore cannot be disregarded without comment"); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) (ALJ must give reasons that are germane to each witness for rejecting lay witness testimony); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d) (4) & (e); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (opinions from other medical sources who are not acceptable medical sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function"). The ALJ may discount testimony from these "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'" See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence

---

[2] The distinction between "other sources" and "acceptable medical sources" is significant because only an "acceptable medical source" may be considered a "treating source." See 20 C.F.R. §§ 404.1502, 416.902, 4040.1513(a). However, when there is an agency relationship between an "acceptable medical source" and an "other source," evidence from that "other source" may be ascribed to the supervising "acceptable medical source." See Buck v.. Astrue, 2010 WL 2650038, *5 (D. Ariz. July 1, 2010) (discussing Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (affording great weight to a nurse practitioner's opinion because she worked closely on an interdisciplinary team with a doctor)).

- 5 -

1 that an ALJ must take into account, unless he or she expressly determines to disregard such
2 testimony and gives reasons germane to each witness for doing so.")).

3       In August 2009, as part of the administrative proceedings, Plaintiff had a consultative
4 examination with Dr. Valeros. (Tr. at 324-30.) Plaintiff reported that her main complaint
5 was low back pain, which did not radiate, and reported that she could do housework, drive,
6 and walk one block. Plaintiff reported that she used no device to assist with walking, and Dr.
7 Valeros observed that she had no difficulty sitting on the examination table. A physical
8 examination was normal other than a limited dorsolumbar range of motion. Dr. Valeros
9 opined that Plaintiff could do the following: (1) lift and carry 20 to 35 pounds occasionally
10 and 25 pounds frequently; (2) stand and/or walk six hours in an eight-hour workday; (3) sit
11 an unlimited amount; (4) occasionally climb ladders, ropes, scaffolds; (5) perform all other
12 postural activities frequently; and (6) not work around heights or moving machinery. (Tr.
13 at 324-30.)

14       In September 2009, State agency consultant Mikhail Bargan, M.D., completed a
15 Physical Residual Functional Capacity Assessment form, wherein he opined that Plaintiff
16 could (1) occasionally lift 20 pounds and frequently lift 25 pounds; (2) stand and/or walk for
17 about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour
18 workday; (4) push or pull an unlimited amount; (5) occasionally climb ladders, ropes, and
19 scaffolds; and (6) avoid concentrated exposure to hazards. (Tr. at 331-38.)

20       In December 2009, Plaintiff had an appointment with physician's assistant Amy
21 Lenox for issues unrelated to the instant matter. (Tr. at 665.) In July 2010, Plaintiff reported
22 to Ms. Lenox that she had two to four episodes of waking up paralyzed for up to two hours.
23 (Tr. at 650-53.) A physical examination was normal, however, including no joint or muscle
24 tenderness, full range of motion in all joints, normal muscle tone and mass, no focal sensory
25 deficits or incoordination, normal gait, and equal reflexes. (Tr. at 651-52.) In August 2010,
26 Ms. Lenox filled out a series of assessment forms. (Tr. at 450-58.) She indicated that
27 Plaintiff was able to sit, stand, and walk for a total of less than eight hours per workday, that
28 she had some handling limitations, and that Plaintiff's headaches would preclude work

functions and/or require breaks. (Tr. at 450-56.) She indicated that Plaintiff's pain was seldom sufficient to interfere with attention and concentration, but also that Plaintiff would often experience deficiencies of concentration, persistence, or pace. (Tr. at 457-58.) In August 2011, Plaintiff again saw Ms. Lenox and stated that she was continuing to have periods of paralysis. (Tr. at 636.)

In his evaluation of the objective medical evidence, the ALJ first noted that Plaintiff has been unable to work because of her back, migraines, and related pain. He stated that Plaintiff has undergone treatment including pain management, epidurals, and physical therapy, yet still complains of symptoms. The ALJ found (1) June 2009 x-rays of Plaintiff's left knee were normal; (2) July 2009 MRI's of Plaintiff's lumbosacral spine and hands were negative with no evidence of acute bony injury in the hands; and (3) December 2010 MRI of Plaintiff's cervical spine was normal. The ALJ also found that Plaintiff had a neurological consultation post back surgery in October 2009 and her low back pain appeared to be "myofascial."

The ALJ then addressed Dr. Valeros' opinion as well as Dr. Bargan's assessment stating:

> The undersigned has considered [Dr. Valeros' opinion] and finds it "persuasive because it is consistent with the longitudinal evidence of record." Likewise with the opinion of the State agency reviewing physician on September 2, 2009. Exhibit 10F. However, the undersigned has included additional limitations in the residual functional capacity assessment to give the claimant the benefit of the doubt.

(Tr. at 23-24.)

Next, the ALJ discussed Ms. Lenox's opinion. (Tr. at 24.) The ALJ gave her "little weight," stating the "longitudinal evidence of record does not support this opinion. The objective evidence of record does not support limitations to the extent noted." The ALJ also determined that little weight is also afforded to her opinion in light of the fact that as a physician's assistant, she is not an acceptable medical source. (Tr. at 24.)

Although the objective medical evidence set forth in the ALJ's decision appears to be limited, the record reflects that the ALJ properly weighed the medical source opinion

1  evidence. The ALJ specifically considered Ms. Lenox's assessment finding a lack of medical
2  evidence supporting her opinion, as well as, inconsistencies between her opinion and the
3  other objective evidence of record. (Tr. at 23-24.) Accordingly, the Court finds that the ALJ
4  properly considered and discounted Ms. Lenox's opinion by providing specific and
5  "germane" reasons. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (an ALJ may
6  discount testimony from "other sources" if the ALJ "gives reasons germane to each witness
7  for doing so"). The ALJ's determination is supported by substantial evidence and, therefore,
8  the Court finds no error.

**B.      Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

1 prior inconsistent statements concerning the symptoms, and other testimony by the claimant
2 that appears less than candid; (2) unexplained or inadequately explained failure to seek
3 treatment or to follow a prescribed course of treatment; and (3) the claimant's daily
4 activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-
5 39.[3]  The ALJ also considers "the claimant's work record and observations of treating and
6 examining physicians and other third parties regarding, among other matters, the nature,
7 onset, duration, and frequency of the claimant's symptom; precipitating and aggravating
8 factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284
9 (citation omitted).

10 Plaintiff testified that she last worked in January 2007, when she was caring for her
11 brother's children. (Tr. at 45.) She reportedly stopped working because of back pain and
12 had not applied for work or made any work attempts since that time. (Tr. at 45.) Plaintiff
13 stated that she could lift a gallon jug with either hand, sit for a half hour at a time, stand for
14 a half hour at a time, and walk for a half block. (Tr. at 49-50.) Plaintiff claimed to do most
15 activities sitting down, but said she could cook and do dishes. (Tr. at 64.) She also watched
16 two hours of television per day and grocery shopped twice a week. (Tr. at 68-69.) Plaintiff
17 stated that her back had slowly gotten worse since her August 2009 back surgery because
18 "there's also two more [discs] that are herniated." (Tr. at 50-51.) She testified that her leg
19 pain initially improved after the surgery but her back pain did not. (Tr. at 54-55.) Plaintiff
20 stated that she had sharp, stabbing pain that sometimes stayed in her back and sometimes
21 radiated down her legs. (Tr. at 56.) Her pain was reportedly worsened by staying in one
22 position for a period of time and leaning over. (Tr. at 57-58.) Plaintiff testified that her legs

---

[3] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

weakened and she fell three to four times per day. (Tr. at 58-59.) She reported getting migraine headaches two to three times per week. (Tr. at 63.)

The ALJ acknowledged "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but stated "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 23.) In support of this determination, the ALJ found that the severity of Plaintiff's symptoms were not supported by the "objective evidence of record," she had "received routine conservative treatment for her impairments," and Plaintiff was able to "engage normally in many activities of daily living." (Tr. at 23.)

Initially, the Court finds that the ALJ failed to explain what "objective evidence of record" detracted from the severity of Plaintiff's symptoms. As the Court has already noted, the objective medical evidence set forth in the ALJ's decision is limited. He discussed some of the medical evidence, but failed to explain how the medical evidence supported a finding that Plaintiff was not credible. Indeed, a general discussion of the medical evidence did not explain how the medical evidence detracted from Plaintiff's credibility. See Mashburn v. Astrue, 2012 WL 359311, at *5 (D. Ariz. Feb. 3, 2012) (noting that although the ALJ discussed medical evidence as part of the credibility determination, the ALJ's discussion "does not explain how those findings undermine Plaintiff's symptom testimony").

Likewise unavailing is the ALJ's reliance on Plaintiff's activities of daily living used to discredit her testimony. The ALJ fails to draw a connection between reported activities of daily living (listed in his opinion as "showering, dressing, housework, and caring for her young daughter" in its entirety) and the ability to sustain work. This Circuit has made clear that the mere fact that a claimant engages in normal daily activities (like "dressing" and "showering") "does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair, 885 F.2d at 603). Thus, the Court finds no inconsistency between Plaintiff's reported activities and her symptom testimony.

- 10 -

1  In summary, the ALJ failed to provide a sufficient basis to find that Plaintiff's
2 allegations were not entirely credible. Accordingly, the ALJ has failed to support his
3 decision to discredit Plaintiff's allegations with specific, clear and convincing reasons and,
4 therefore, the Court finds error and will vacate the ALJ's decision on that basis.

5  "When an ALJ's denial of benefits is not supported by the record, the proper course,
6 except in rare circumstances, is to remand to the agency for additional investigation or
7 explanation." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted). The
8 Court applies the credit-as-true rule to determine that a claimant is disabled and entitled to
9 an award of benefits only if there are no "outstanding issues [in the record] that must be
10 resolved" and "it is clear from the record that the ALJ would be required to find the claimant
11 disabled were [the improperly rejected] evidence credited." Harman v. Apfel, 211 F.3d
12 1172, 1178 (9th Cir. 2000). However, a "claimant is not entitled to benefits under the statute
13 unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be."
14 Strauss v. Comm'r, Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011). An award of
15 benefits is appropriate only if all factual issues have been resolved and the record supports
16 a finding of disability.

17  Here, there are identifiable issues to be resolved on remand. Notwithstanding the
18 deficiencies in the ALJ's decision regarding Plaintiff's subjective complaints, the ALJ did
19 point to evidence in the record that would support a finding of non-disability. Because there
20 are outstanding issues to be resolved regarding Plaintiff's credibility, the Court will remand
21 this matter for further administrative proceedings.

22 \\\
23 \\\
24 \\\
25 \\\
26 \\\
27 \\\
28

Therefore,

**IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth in this Order;

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 25th day of September, 2014.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge